# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**LONNIE COLEMAN, JR.,**

    Plaintiff,

vs.                                     **Case No.: 8:09-CV-1137-T-30EAJ**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide

---

[1] The district court has referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, generally a reversal with remand to the Commissioner for application of the correct legal standard is warranted.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff, forty-five years old at the time of the ALJ hearing (August 12, 2008) has a G.E.D. and prior work experience as a cashier, kitchen helper, pizza cook, utility worker, short order cook, construction worker, and stocker in a retail store. (T 19-21, 44-46)  Plaintiff alleges an onset of disability of April 4, 2006.  (T 93-106)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 4, 2006, and met the insured status requirements of the Act through June 30, 2008.  (T 10)  Plaintiff had severe impairments of headaches, hypertension, cervical radiculopathy, and depression (Id.), but the impairments did not, singly or in combination, meet or medically equal in severity any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Despite the severe impairments, the ALJ found that Plaintiff can perform a restricted range of sedentary work.  Due to depression, Plaintiff is "limited to one/two-step, entry-level, repeated/routine, unskilled, low-stressed work dealing with things rather than people." (T 11) Plaintiff can also lift up to 10 pounds occasionally and light weights frequently because of cervical

radiculopathy and related symptoms in the upper extremities. (Id.) Plaintiff can stand/walk/sit up to six hours each in an eight hour day, but must avoid climbing and exposure to hazards and temperature extremes. (Id.) While finding Plaintiff unable to return to his former work, the ALJ stated that Plaintiff could perform work as a sorter consistent with his RFC. (T 14) The ALJ therefore denied Plaintiff's applications for disability benefits. (T 8-14)

Following an unsuccessful appeal to the Appeals Council (T 1), Plaintiff filed this action for judicial review.

Plaintiff's memorandum of law presents a single issue: whether the ALJ properly evaluated Plaintiff's testimony regarding the disabling effects of Plaintiff's headaches and shoulder pain. The medical and other evidence has been discussed in the ALJ's opinion and will not be repeated unless necessary to address the issue presented.

## II.

There is no question that Plaintiff suffers from headaches and shoulder pain. Indeed, the ALJ found them to be severe impairments. The issue is whether, despite these impairments and the others specified by the ALJ, Plaintiff can perform substantial gainful activity.

The Eleventh Circuit has established a three-part standard to use when evaluating a claimant's complaints of pain and other subjective symptoms. A plaintiff must show: (1) evidence of an underlying medical condition; and either (2) medical evidence which substantiates the severity of the pain from the condition; or (3) the condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. See Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

Where an ALJ declines to credit a claimant's testimony as to pain, the ALJ must articulate

explicit and adequate reasons for doing so. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court. Id. A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id. (citation omitted).

Plaintiff's testimony

Plaintiff testified that he stopped working in December 2003 because he was having stabbing headaches on his right side. (T 24-25) He still experiences headaches daily despite taking medication. (T 26-27) Plaintiff has difficulty concentrating and cries three or four times a week. (T 29-30) He also has weakness in both of his arms and cannot lift anything. (T 30)

Plaintiff reported headaches on the right side of his head that felt like he was being stabbed with a knife. (T 24) The headaches occurred "all the time," would last "some hours," and would sometimes reoccur within the same day. (T 24-25) Plaintiff asserted that he could perform no activity whatsoever and could not think while experiencing a headache. (T 26, 30) He testified that his beta-blocker medication "[didn't] really work." (T 26) Plaintiff stated that he rarely left home and "ha[d] to be in a dark spot all the time" due to the headaches. (T 32-33)

Regarding daily activities, Plaintiff lives with his parents and stays in the house most of the day lying down to minimize the pain from his headaches. (T 31-32) About twice a week he goes to the store for his parents. (T 33) During one visit to the store, he was robbed and his jaw broken.[2] (T 34) Every two months, he goes to the Suncoast clinic where he receives free medications. (T

---

[2] Plaintiff's girlfriend, Andrea Butler, testified that Plaintiff is usually upstairs in his room when she visits him. (T 37) She testified he is not the same person she knew, due to his headaches and other problems. (T 38)

42)

Medical Evidence

### Headaches

An MRI in December 2003 revealed no abnormalities explaining Plaintiff's headaches. (T 378) Neurologist Lalitha Jacob, M.D. ("Dr. Jacob") detected only mild abnormalities in an electroencephalogram ("EEG") in September 2004. (T 294) In March 2006, an examining neurologist, Harish Patel, M.D. ("Dr. Patel") indicated that the headaches were vascular in origin. (T 207) Brian Wiley, M.D. ("Dr. Wiley") reported in 2007 that Plaintiff had some relief from beta-blockers. (T 352)

Specifically, Plaintiff saw Dr. Jacob in April 2004 for an evaluation of "constant aching sensation on the right side of the head for about four months." (T 293) Dr. Jacob adjusted Plaintiff's medications, recommended that he undergo a sleep-deprived EEG, and advised him to obtain the results of a cranial computed tomography ("CT") scan of his brain. (Id.) Plaintiff's September 2004 EEG results were "mildly abnormal," indicating "transient, diffuse, brief slowing which could [have been] consistent with a transient diffuse ischemia, which in turn could [have been] consistent with migraine or vascular disease." (T 294) When Plaintiff returned in September 2005 complaining of headaches, Dr. Jacob adjusted his medications and again requested that he obtain results of his CT scan. (T 290-91)

Plaintiff saw Dr. Patel in March 2006 for a neurological evaluation. (T 204) Plaintiff reported experiencing headaches since 2003. (Id.) Surmising that Plaintiff's headaches were vascular in origin, Dr. Patel prescribed several medications and recommended that Plaintiff have a MRI scan and an EEG. (T 207) The ALJ noted that in 2003 the MRI revealed "no abnormalities"

and the September 2004 EEG showed only mild abnormalities. (T 11-12; 294; 378)

In July 2007, Brian Wiley, M.D. ("Dr. Wiley") prescribed propranolol, a beta-blocker, for Plaintiff's migraines.[3] (T 354) Two weeks later, Plaintiff reported that the beta-blocker caused him to feel "much better" and reduced the frequency of his migraines. (T 352) The following September, Dr. Wiley completed an RFC questionnaire regarding Plaintiff's headaches. (T 279-84) Dr. Wiley confirmed that Plaintiff had headaches that could reasonably have been caused by hypertension or migraines. (T 279-80) However, the nature, location, intensity/severity, frequency, and duration of the headaches were "unknown." (T 279, 281) There were no positive test results or objective signs of Plaintiff's headaches and no resulting limitations were assigned. (T 280) Noting that the propranolol led to "good results" and that Plaintiff reported decreased frequency of headaches, Dr. Wiley's prognosis was "good." (T 282) The following month, despite a sole complaint of fatigue, Plaintiff was "feeling fairly good." (T 350) By November 2007, Plaintiff's fatigue had resolved and he had no complaints. (T 348)

Shoulder Pain

Regarding Plaintiff's treatment for arm and shoulder pain, shoulder x-rays in 2007 showed no significant abnormality. (T 391-92) Subsequent nerve conduction studies by Dr. Jacob showed acute mild-to-moderate radiculopathy in the left shoulder and bilateral subacute chronic moderate radiculopathy as well as mild right carpal tunnel syndrome. (T 295) Two weeks later, Plaintiff received trigger point and interspinous injections. (T 297)

---

[3] Propranolol "is in a group of drugs called beta-blockers. Beta-blockers affect the heart and circulation." Propranolol Information from Drugs.com, http://www.drugs.com/propranolol.html (last visited Dec. 9, 2010). It is used, inter alia, "to reduce the severity and frequency of migraine headaches." Id.

In November 2007, Plaintiff told Dr. Wiley that he was obtaining "minor relief, if any" from the injections; they worked for a while and then the pain would resume. (T 348) But, Plaintiff admitted that Dr. Jacob had told him he would need multiple rounds of injections to obtain chronic relief. (Id.) Dr. Wiley contemplated a referral to pain management if the injections did not relieve Plaintiff's complaints. (Id.)

A cervical spine tomography in December 2007 was negative for a fracture or other abnormality, but indicated that there were "bilateral pterygoid plate fractures." (T 382)

The ALJ's Assessment

The ALJ evaluated Plaintiff's testimony regarding the disabling nature of his headaches. (T 11) However, the ALJ noted that, despite Plaintiff's testimony that the headaches had worsened in 2002, a December 2003 MRI revealed no abnormalities, an electroencephalogram in 2003 showed only mild abnormalities, and Dr. Wiley reported in 2007 that Plaintiff experienced relief with beta-blockers. (Id.) Also, a neurological examination in 2006 suggested that the headaches were vascular in origin. (Id.) The ALJ pointed out that Plaintiff's diagnosis of hypertension could explain the headaches, but records showed that this condition had been controlled with medication and had not required hospitalization or other treatment. (Id.) Finally, during Plaintiff's treatment for a fractured jaw and left maxillary sinus in December 2007, an MRI of the brain revealed meningeal calcification of the right optic nerve, but no meningioma. (T 12) Nor was any abnormality noted in a brain tomography. (Id.)

Although the ALJ noted a lack of medical evidence confirming Plaintiff's testimony regarding the severity of his headaches, this was not the only reason the ALJ discounted that testimony. The ALJ properly relied on Dr. Wiley's functional assessment as inconsistent with

7

Plaintiff's testimony. See 20 C.F.R. §§ 404.1529(a), (c)(1), 416.929(a), (c)(1) (distinguishing "signs and laboratory findings" from "medical opinions"). Moreover, Plaintiff's self-reported improvement from the beta-blockers was a proper reason to discredit his contrary testimony. Plaintiff's testimony that he spends most of his time in darkness due to headaches was also inconsistent with the lack of complaints of headaches during his last two visits to Dr. Wiley. As these reasons are substantial evidence to support the ALJ's findings as to the evaluation of Plaintiff's testimony regarding headaches, remand is unwarranted.

Regarding the complaints of radiculopathy, the ALJ also provided substantial evidence to reject Plaintiff's testimony that he cannot lift anything or has limitations due to this condition which are more significant than the ALJ determined. The diagnostic studies showed, at most, mild to moderate impairments; there were no acute or significant chronic abnormalities. (T 11) Plaintiff has been treated with medication, physical therapy, and cortisone injections. (T 12) And, as the ALJ noted, there is no evidence that Plaintiff's condition has required "surgical intervention, intensive outpatient care, [or] in pain management" nor is there evidence of specific allegations of difficulty performing activities of daily living. (Id.) Accordingly, no remand is warranted regarding the ALJ's evaluation of Plaintiff's testimony on this issue.

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses; and

(2)   the Clerk of the Court enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g) and close this case.

**Date: December 29, 2010**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. <u>See</u> 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge

9